**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Najib A Hodge, | No. CV-26-03101-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| NAPA Genuine Auto Parts, | |
| Defendant. | |

Pending before the Court is Plaintiff's Motion for Default Judgment as to NAPA Genuine Auto Parts (Doc. 32). The Court now rules.

## I.      BACKGROUND

On September 10, 2025, Plaintiff filed an amended complaint (Doc. 12) against Defendants NAPA Genuine Auto Parts ("NAPA") and DoorDash, Inc. ("DoorDash"). After the Court compelled arbitration as to Plaintiff's claims against DoorDash and stayed the proceedings as to DoorDash only (Doc. 31), the Court severed Plaintiff's claims as to NAPA. (Doc. 1). This case involves only Plaintiff's claims against NAPA.

The Court's October 8, 2025 Screening Order (Doc. 16) dismissed two counts against NAPA, but ordered NAPA to respond to Plaintiff's claims of public accommodation discrimination (under federal and state law) and negligent supervision (state common law) against NAPA. (Doc. 16 at 2–4, 7). NAPA was served with process on December 8, 2025. (Doc. 21). NAPA has failed to appear or otherwise defend this action, and on December 29, 2025, the Clerk of the Court entered NAPA's default pursuant

to Rule 55(a). (Doc. 25). Plaintiff's previous application for entry of default judgment (Doc. 26) was denied without prejudice in this Court's January 22, 2026 Order (Doc. 28). Thereafter, Plaintiff filed the pending Motion for Default Judgment as to NAPA (Doc. 32).

## II.    DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55 requires a "two-step process" that consists of (1) seeking the clerk's entry of default and (2) filing a motion for entry of default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). If a defendant fails to plead or otherwise defend an action after being properly served with a summons and complaint, the clerk must enter the party's default pursuant to Rule 55(a). Once the clerk has entered default, a court may, but is not required to, grant default judgment under Rule 55(b). *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam). In considering whether to enter default judgment, a court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72. When considering these factors, a defendant is deemed to have admitted all well-pleaded allegations in the complaint but does not admit allegations related to damages or those that do no more than "parrot" the elements of a claim. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).

Finally, before awarding a default judgment against a defendant, the Court must determine the adequacy of service of process, as well as the Court's jurisdiction over the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

Because service appears to have been proper and default judgment may be entered against NAPA, the Court will address the *Eitel* factors to determine whether default

judgment is appropriate. (Doc. 12 at 5–6; Doc. 16; Doc. 21; Doc. 24).

### A. Possible Prejudice to Plaintiff

A possibility of prejudice exists when failure to enter default judgment denies a plaintiff judicial resolution of the claims presented or leaves them without other recourse for recovery. *Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). NAPA has neither answered nor appeared. If Plaintiff's motion for default judgment is not granted, he will likely be left without recourse. Therefore, the first *Eitel* factor weighs in favor of granting the motion.

### B. Sufficiency of the Complaint and Merits of Plaintiff's Claim

"The second and third *Eitel* factors address the substantive merits of the claim and the sufficiency of the complaint and are often analyzed together." *Joe Hand Promotions, Inc. v. Garcia Pacheco*, No. 18-cv-1973-BAS-KSC, 2019 WL 2232957, at *2 (S.D. Cal. May 23, 2019); *Ariz. Bd. of Regents v. Doe*, 555 F. Supp. 3d 805, 816 (D. Ariz. 2021). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Ariz. Bd. of Regents*, 555 F. Supp. 3d at 816 (quoting *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019)); *see also Sotanski v. HSBC Bank USA, Nat'l Ass'n*, No. 15-CV-01489-LHK, 2015 WL 4760506, at *7 (N.D. Cal. Aug. 12, 2015) ("[C]ourts routinely deny any motion for default judgment predicated on a legally insufficient or dismissed pleading."), *aff'd sub nom. Sotanski v. HSBC Bank USA, NA*, 671 F. App'x 999 (9th Cir. 2016). These two factors may favor entering default judgment when, considering the complaint and subsequently submitted affidavits, a plaintiff shows a plausible claim for relief. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also J & J Sports Prods., Inc. v. Molina*, No. CV15-0380 PHX DGC, 2015 WL 4396476, at *1 (D. Ariz. July 17, 2015) (considering affidavits attached to the motion for default judgment).

The Court's October 8, 2025 Screening Order allowed Plaintiff's claims of public accommodation discrimination and negligent supervision and retention to proceed because Plaintiff's amended complaint, construed liberally, states a claim for those counts. (Doc.

- 3 -

16 at 3). However, contrary to Plaintiff's assertion, the Court's determination that Plaintiff stated a claim does not automatically mean Plaintiff's claims are plausible, and the Court specifically allowed these claims to proceed without prejudice to NAPA making appropriate motions, including a motion to dismiss. (Doc. 16 at 4 n.1); *See Coleman v. Maldnado*, 564 F. App'x 893, 894 (9th Cir. 2014) (a district court may properly grant a motion to dismiss despite a prior screening order finding the complaint stated a claim); *Jones v. Sullivan*, 19-CV-0025BKSCFH, 2020 WL 5792989, at *5 (N.D.N.Y. Sept. 29, 2020) ("A court's initial screening under § 1915(e) and/or § 1915A does not preclude a later dismissal under Fed. R. Civ. P. 12(b)(6)."). Thus, the Court will address the merits of each claim.

i.    Public Accommodation Discrimination

Plaintiff brings a claim of racial discrimination under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, and the Arizona Civil Rights Act ("ACRA"), A.R.S. § 41-1442. (Doc. 12 at 8; Doc. 16 at 3).

a. Title II

Title II provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). The statute defines "place of public accommodation" as lodgings, restaurants, gas stations, and entertainment facilities. 42 U.S.C. § 2000a(b); *Ford v. Surprise Fam. Urgent Care Ctr.*, LLC, No. CV 10-1920-PHX-SRB, 2011 WL 13137866, at *2 (D. Ariz. Sept. 6, 2011). Courts construe this list narrowly and have consistently declined to expand the scope of the statute beyond the facilities specifically enumerated. *Dragonas v. Macerich*, No. CV-20-01648-PHX-MTL, 2021 WL 3912853, at *4 (D. Ariz. Sept. 1, 2021); *303 Creative LLC v. Elenis*, 600 U.S. 570, 609 (2023) (Sotomayor, J., dissenting) (noting that 42 U.S.C. § 2000a limits the establishments that qualify to "hotels, restaurants, gas stations, movie theaters, concert halls, sports arenas, stadiums"). Plaintiff has not alleged that NAPA is a

lodging, restaurant, gas station, or entertainment facility, or any facility exhaustively enumerated in Title II. NAPA is an auto parts store, and therefore Title II is not applicable to NAPA. *See Hodge v. Home Depot*, 2024 WL 4026218, at *1 (D. Ariz. Sept. 3, 2024) (stating that Title II is not applicable to a hardware store). Accordingly, Plaintiff is not entitled to relief under Title II.

### b.  ACRA

The ACRA provides that "[d]iscrimination in places of public accommodation against any person because of race, color, sex, national origin or ancestry is contrary to the policy of this state and shall be deemed unlawful." A.R.S. § 41-1442(A). "Places of public accommodation" is defined as places of entertainment, restaurants, lodgings, "and all establishments which cater or offer their services, facilities or goods to or solicit patronage from the members of the general public." A.R.S. § 41-1441(2). Although Title II is not applicable to NAPA, Arizona's public accommodation statute is broader in scope and is applicable to NAPA. *See 303 Creative LLC*, 600 U.S. at 615 (Sotomayor, J., dissenting) (noting that Arizona's public accommodation statute has a broader scope than the federal counterpart); *Hameen v. Dollar Tree Stores Inc.*, 2022 WL 17416768, at *5 (D. Ariz. Dec. 5, 2022) (applying the ACRA to a retail store).

The ACRA prohibits the denial or withholding of "accommodations, advantages, facilities or privileges" based on these characteristics, or distinction in "price or quality of any item, goods or services offered" based on these characteristics. A.R.S. § 41-1442(B). In applying Arizona's statute, courts in this district have applied the analytical framework in 42 U.S.C. § 1981 claims and Title II claims. *York v. JPMorgan Chase Bank, Nat'l Ass'n*, 2019 WL 3802535, at *4–5 (D. Ariz. Aug. 13, 2019). To succeed on a claim under Title II, a plaintiff must show that he: "(1) is a member of a protected class; (2) attempted to exercise the right to full benefits and enjoyment of a place of public accommodations; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons who are not members of the protected class." *Id.* at *5 (quoting *Brown v. Luxor Hotel & Casino*, 2014 WL 2858488, at *2 (D. Nev. June 23, 2014)). Once a plaintiff

- 5 -

makes these showings, "the burden shifts to [the defendant] to proffer a legitimate, non-discriminatory reason for its actions." *Fuentes v. Planet Fitness*, 2022 WL 3577275, at *1 (D. Ariz. Aug. 19, 2022).

Plaintiff has established the first and second element. However, the third element requires a plaintiff "to show a denial of service rather than a delay in order to state a claim." *York*, 2019 WL 3802535, at *5. Here, Plaintiff alleges that a NAPA employee was helping Plaintiff when a second NAPA employee made a racially derogatory comment to Plaintiff in passing. (Doc. 12 at 17–18). Plaintiff further alleges that as he was attempting to "deal with this legal matter" with DoorDash and NAPA management, the assistant manager contacted DoorDash for another delivery driver, who arrived 5 minutes later and completed the job instead of Plaintiff. (Doc. 12 at 18).

By his own statement, Plaintiff admits that he was not initially denied service, as he was helped by a NAPA employee as soon as he entered the store. (Doc. 12 at 17). Even after the comment was made, Plaintiff does not suggest that a NAPA employee asked him to leave or refused to sell him goods. Stray derogatory remarks "cannot, by themselves, support [an ACRA discrimination claim] absent some connection to the denial of goods or services." *Fuentes*, 2022 WL 3577275, at *2. Here, there was no denial of goods or services. Therefore, Plaintiff is not entitled to relief under the ACRA.

To the extent the assistant manager's request for another delivery driver could be construed as some sort of denial of goods or services, Plaintiff did not allege that the assistant manager requested a new delivery driver because of Plaintiff's race. Instead, the facts alleged by Plaintiff suggest that the assistant manager called for another delivery driver because Plaintiff was still at the NAPA store dealing with the incident and thus could not have completed the delivery during that time. (Doc. 12 at 18). Thus, Plaintiff's ACRA claim would still fail because there was a legitimate, non-discriminatory reason to request another delivery driver.

Therefore, the second and third *Eitel* factors weigh heavily against granting default judgment for the public accommodation claim.

ii.      Negligent Supervision and Retention

Plaintiff also brings a claim of negligent supervision and retention under Arizona law. (Doc. 12 at 8; Doc. 16 at 3). "An employer is liable for the tortious conduct of its employee if the employer was negligent or reckless in hiring, supervising, or otherwise training the employee." *Hernandez v. Singh*, 2019 WL 367994, at *6 (D. Ariz. Jan. 30, 2019) (citation omitted). "Arizona follows the Restatement (Second) of Agency § 213 ("Restatement") for negligent hiring, supervision, and training claims." *Charley v. United States*, 437 F. Supp. 3d 745, 750 (D. Ariz. 2020) (citing *Kassman v. Busfield Enters, Inc.*, 131 Ariz. 163, 166 (App. 1981)). The Restatement provides that "[a] person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless" in giving improper instruction, in the employment of improper persons, or in the supervision of the activity. Restatement § 213.

"For an employer to be liable for negligent supervision under Arizona law, a plaintiff must demonstrate (1) that the employer knew or should have known that the employee was not competent to perform the assigned task and (2) that the employer's failure to supervise the employee caused the plaintiff's injury." *Charley*, 437 F. Supp. 3d at 750. Importantly, "[f]or an employer to be held liable for the negligent hiring, retention, or supervision of an employee, a court must first find that the employee committed a tort." *Kuehn v. Stanley*, 208 Ariz. 124, 130 ¶ 21 (App. 2004). "If the theory of the employee's underlying tort fails, an employer cannot be negligent as a matter of law for hiring or retaining the employee." *Id.* Here, the underlying injury is public accommodation discrimination. (Doc. 16 at 3). As explained above, Plaintiff has not shown a plausible claim for relief for public accommodation discrimination. Therefore, Plaintiff's negligent supervision and retention claim also fails.

Even if Plaintiff had alleged a plausible claim under the public accommodation discrimination statutes, Plaintiff has not alleged any facts that would show that NAPA knew or should have known that the employee would act improperly or that NAPA's failure to supervise the employee caused Plaintiff's injury. *See Rice v. Brakel*, 233 Ariz.

140, 145 ¶ 19 (App. 2013) ("[W]hen an agent's actions are actually hostile to the interests of his employer, the presumption is that the employer has no knowledge of the agent's actions."). Moreover, "Arizona law limits negligent supervision claims to instances where an employee is performing a task on the employer's behalf." *Mendez v. United States*, 2026 WL 482685, at *4 (D. Ariz. Feb. 20, 2026). The NAPA employee who made the derogatory comment was not the employee assisting Plaintiff and was not performing a task on the employer's behalf when he made the comment. (Doc. 12 at 4).

Accordingly, Plaintiff has not shown a plausible claim for relief for negligent supervision and retention. The second and third *Eitel* factors thus weigh heavily against granting default judgment for the negligent supervision and retention claim.

### C. Sum at Stake

"Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of [Defendant's] conduct." *Bankers Ins. Co. v. Old W. Bonding Co., LLC*, 2012 WL 2912912, at *2 (D. Ariz. July 16, 2012). "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Zekelman Indus. Inc. v. Marker*, 2020 WL 1495210, at *4 (D. Ariz. Mar. 27, 2020) (citation omitted). In his motion for default judgment, Plaintiff states that he is seeking $16,383,350.00 and concedes that this is substantial. (Doc. 32 at 5; Doc. 32-2 at 4); *see Zekelman*, 2020 WL 1495210, at *4 (finding that $639,774.25 is "a substantial sum"). Plaintiff's claims against NAPA stem from one derogatory comment made by a NAPA employee. As explained above, Plaintiff has not plausibly alleged that NAPA is liable for its employee's comment. The seriousness of NAPA's alleged violations is inconsistent with such a large award. Accordingly, the fourth *Eitel* factor weighs heavily against default judgment.

### D. Possibility of Disputed Material Facts

The fifth *Eitel* factor also weighs against default judgment. While the well-pleaded facts in the complaint other than damages are taken as true on entry of default, as discussed above, Plaintiff has not pleaded all material facts needed to support his claims. Thus, it is possible a dispute may arise from a material fact not yet pleaded. Accordingly, the Court

- 8 -

finds that the fifth *Eitel* factor weighs against default judgment. *See Eason v. IndyMac Bank, FSB*, 2010 WL 4573270, at *3 (D. Ariz. Nov. 5, 2010).

### E.  Excusable Neglect

The sixth *Eitel* factor weighs in favor of default judgment. Here, the possibility that default resulted from excusable neglect appears unlikely. NAPA failed to answer the complaint or otherwise respond and did not oppose Plaintiff's motion for default judgment. Accordingly, this factor weighs in favor of granting default judgment. *See Eason*, 2010 WL 4573270, at *3.

### F.  Policy Favoring Decision on the Merits

The seventh *Eitel* factor generally weighs against default judgment, given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b) of the Federal Rules of Civil Procedure, which authorizes default judgments, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal quotation marks omitted). Put simply, "the default mechanism is necessary to deal with wholly unresponsive parties who could otherwise cause the justice system to grind to a halt. Defendants who appear to be 'blowing off' the complaint should expect neither sympathy nor leniency from the court." 2 Gensler, Federal Rules of Civil Procedure Rules and Commentary, Rule 55, at 123–24 (2021); *Ariz. Bd. of Regents*, 555 F. Supp. 3d at 816.

Therefore, because factors two, three, four, five, and seven weigh against granting default judgment, the Court finds that Plaintiff is not entitled to default judgment against Defendant NAPA.

### III.    DISMISSAL

Although the Court's October 8, 2025 Screening Order (Doc. 16) allowed Plaintiff's public accommodation discrimination and negligent supervision claims against NAPA to proceed, upon closer examination of the merits of Plaintiff's claims under the *Eitel* factors, the Court has determined that Plaintiff failed to state a claim against NAPA. Therefore, the Court will dismiss Plaintiff's claims against NAPA. *See Ariz. Bd. of Regents*, 555 F. Supp.

3d at 819 (noting that a court's conclusion that the second and third *Eitel* factors weigh against the entry of default judgment on some claims "also cuts in favor of dismissing" those claims because "it would be pointless to deny the default judgment motion but then allow those claims to linger on the Court's docket"); *Health Cost IQ Inc. v. BDG Benefits Design Group Inc.*, 2025 WL 1591284, at *3 (D. Ariz. June 5, 2025) ("Dismissal with prejudice appears to be the common practice of courts that deny default judgment motions as to some or all of the claims when amendment would be futile.").

## A. Title II

"A trial court may dismiss a claim sua sponte under Rule 12(b)(6)." *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987). "Such a dismissal may be made without notice where the claimant cannot possibly win relief." *Id.* As explained in the Court's *Eitel* analysis, Title II is not applicable to NAPA because NAPA is not a "place of public accommodation" as defined by the statute. 42 U.S.C. § 2000a(b); *see Hodge*, 2024 WL 4026218, at *1. Because there is nothing Plaintiff could allege that would allow him to obtain relief against NAPA under Title II, Plaintiff "cannot possibly win relief" on that claim. Therefore, this Court may dismiss the Title II claim without notice. *Omar*, 813 F.2d at 991. Moreover, because leave to amend would be futile, Plaintiff's Title II claim against NAPA is dismissed with prejudice. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 297 (9th Cir. 1990) (concluding that dismissal with prejudice was proper when "amendment would not cure the deficiencies in the complaint"); *Fordjour v. Southwall Techs., Inc.*, 126 F. App'x 351, 353 (9th Cir. 2005).

## B. State Law Claims

In the Court's *Eitel* analysis, the Court determined that Plaintiff failed to allege facts sufficient to state a claim for public accommodation discrimination or negligent supervision under Arizona law. "Dismissal of a pro se complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Schucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988) (internal quotation marks and citation omitted); Fed. R. Civ. P. 15(a)(2) ("The court should

freely give leave when justice so requires."). Unlike Plaintiff's Title II claim, the Court cannot determine with absolute certainty whether Plaintiff's state law claims can be cured by amendment. Therefore, the Court will dismiss the state law claims with leave to amend.

### C. Leave to Amend

If Plaintiff chooses to amend, he is cautioned that he must first allege federal subject matter jurisdiction. 28 U.S.C. §§ 1331, 1332. Although "when a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims," *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), the Court notes that with the dismissal of Plaintiff's Title II claim providing for federal question jurisdiction, the Court will decline to exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (9th Cir. 1988) ("The statement [in *Gibbs*] simply recognizes that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state-law claims."); *see also Abhyanker v. HumanGood the Terraces Phx.*, 2024 WL 3992674, at *3 (D. Ariz. Aug. 29, 2024). Therefore, if Plaintiff chooses to amend, he may not rely on supplemental jurisdiction stemming from the dismissed Title II claim and must otherwise allege federal subject matter jurisdiction.

The Court further cautions that if Plaintiff chooses to amend and adequately alleges federal subject matter jurisdiction, he must allege material facts that would state a plausible claim for relief under the state law claims—the requirements of which are detailed above in the Court's discussion of the second and third *Eitel* factors. *See Balistreri v. Pacifica*

*Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) ("Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."). If Plaintiff fails to allege material facts that would entitle Plaintiff to relief under these claims, the Court will determine that any further opportunities to amend would be futile and will therefore dismiss this case without further leave to amend. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (futility alone justifies denying leave to amend); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (repeated failure to cure deficiencies is one of the factors to be considered in deciding whether justice requires granting leave to amend).

### IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Default Judgment (Doc. 32) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's amended complaint (Doc. 12), as severed (*see* Doc. 1), is **DISMISSED**. Plaintiff has 30 days from the date of this Order to file a second amended complaint. If Plaintiff fails to file a second amended complaint within this deadline, the Clerk of the Court shall enter judgment dismissing this case. If Plaintiff files a second amended complaint, it shall not be served until it is screened.[1]

Dated this 18th day of May, 2026.

James A. Teilborg
Senior United States District Judge

---

[1] In the event Plaintiff chooses to amend, the Court would vacate the Clerk of Court's entry of default (Doc. 25) because Plaintiff would need to serve NAPA again.