WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Najib A Hodge,

        Plaintiff,

v.

NAPA Genuine Auto Parts,

        Defendant.

No. CV-26-03101-PHX-JAT

**ORDER**

Pending before the Court is Plaintiff's Motion for Reconsideration (Doc. 44). For the reasons explained below, the Court will deny Plaintiff's Motion for Reconsideration.

**I.      BACKGROUND**

On September 10, 2025, Plaintiff filed an amended complaint (Doc. 12) against Defendant NAPA Genuine Auto Parts ("NAPA"). The Court's October 8, 2025 Screening Order (Doc. 16) dismissed two counts against NAPA, but ordered NAPA to respond to Plaintiff's claims of public accommodation discrimination (under federal and state law) and negligent supervision (state common law) against NAPA. (Doc. 16 at 2–4, 7). NAPA was served with process on December 8, 2025. (Doc. 21). NAPA has failed to appear or otherwise defend this action, and on December 29, 2025, the Clerk of the Court entered NAPA's default pursuant to Rule 55(a). (Doc. 25).

The Court's May 18, 2026 Order (Doc. 35) denied Plaintiff's Motion for Default Judgment (Doc. 32) and dismissed Plaintiff's amended complaint (Doc. 12) with leave to amend. (Doc. 35 at 12). On May 21, 2026, Plaintiff filed a Motion for Reconsideration

(Doc. 37). On May 26, 2026, Plaintiff filed a "First Motion for Reconsideration" (Doc. 39). On May 28, 2026, Plaintiff filed another "First Motion for Reconsideration" (Doc. 40), and on the same day, Plaintiff also filed a Notice of Errata (Doc. 41) regarding that motion. The Court's June 1, 2026 Order (Doc. 42) directed Plaintiff to file one consolidated motion for reconsideration by June 5, 2026. Plaintiff filed his consolidated Motion for Reconsideration on June 8, 2026 (Doc. 44) along with a request for the Court to consider his late filing (Doc. 43). The Court will consider Plaintiff's Motion for Reconsideration (Doc. 44).

## II.    LEGAL STANDARD

Motions for reconsideration should be granted only in rare circumstances. *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). A motion for reconsideration is appropriate where the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Such motions should not be used for the purpose of asking a court "'to rethink what the court had already thought through—rightly or wrongly.'" *Defenders of Wildlife*, 909 F. Supp. at 1351 (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Nor may a motion for reconsideration repeat any argument previously made in support of or in opposition to a motion. *Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003). Mere disagreement with a previous order is an insufficient basis for reconsideration. See *Leong v. Hilton Hotels Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988).

## III.    DISCUSSION

Plaintiff argues that the Court committed clear error. (Doc. 44 at 4, 16). "Clear error occurs when 'the reviewing court on the entire record is left with the definite and firm

conviction that a mistake has been committed.'" *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

### A. Screening Order

Plaintiff argues that the Court erred in applying "a more restrictive plausibility analysis" than the one used in the Court's October 8, 2025 Screening Order (Doc. 16). (Doc. 44 at 5). However, as the Court's May 18, 2026 Order explained, "the Court's determination that Plaintiff stated a claim does not automatically mean Plaintiff's claims are plausible, and the Court specifically allowed these claims to proceed without prejudice to NAPA making appropriate motions, including a motion to dismiss." (Doc. 35 at 4; Doc. 16 at 4 n.1); *see Coleman v. Maldnado*, 564 F. App'x 893, 894 (9th Cir. 2014) (a district court may properly grant a motion to dismiss despite a prior screening order finding the complaint stated a claim); *Jones v. Sullivan*, 19-CV-0025BKSCFH, 2020 WL 5792989, at *5 (N.D.N.Y. Sept. 29, 2020) ("A court's initial screening under § 1915(e) and/or § 1915A does not preclude a later dismissal under Fed. R. Civ. P. 12(b)(6).").

The cursory review of a claim when screening a complaint typically does not include a full analysis and lacks the benefit of the opposing party's briefing. *See Laszloffy v. Garcia*, No. 2:19-cv-01173-JAD-BNW, 2024 WL 870580, at *2 (D. Nev. Feb. 29, 2024); *Baldhosky v. Hubbard*, No. 1:12-cv-01200-LJO-MJS, 2017 WL 68098, at *2 (E.D. Cal. Jan. 5, 2017). Here, the Screening Order allowed Plaintiff's Title II claim to proceed because "Plaintiff claims he was discriminated against by a NAPA employee based on his race," and when "[c]onstrued liberally, this states a claim." (Doc. 16 at 3). The Court did not analyze whether NAPA was a "place of public accommodation" under Title II, and the Court did not discuss public accommodation discrimination under Arizona law. (Doc. 16 at 3). As discussed in the Court's May 18, 2026 Order, the Court's analysis of the merits of Plaintiff's claims under the *Eitel* factors was a more focused and thorough analysis than the analysis in the Screening Order. (Doc. 35 at 9); *see Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). The discrepancy in outcome between the Screening Order and the

Court's May 18, 2026 Order is due to the Court's more robust analysis of the law—not a change in the standard of review, as suggested by Plaintiff.

In both the Screening Order and the May 18, 2026 Order, the Court accepted as true all well-pleaded allegations of material fact in the complaint and construed inferences in Plaintiff's favor. *See Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). Plaintiff argues that the Court resolved factual inferences against him but does not identify what factual inferences he is referring to. (Doc. 44 at 5, 12, 15–16). While the Court must resolve factual inferences in favor of Plaintiff, the Court need not accept legal conclusion couched as factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and it is not "proper to assume that [Plaintiff] can prove facts that [he] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Therefore, the Court finds no clear error.

### B. Title II Public Accommodation Discrimination

Plaintiff argues that the Court "revisited the plausibility of the Title II claim and adopted a narrower interpretation of the statute based on a non-precedential memorandum disposition." (Doc. 44 at 13). While the Screening Order found that discrimination on the basis of race is within the scope of Title II, the Court did not determine whether NAPA was a "place of public accommodation" under the statute. (Doc. 16 at 3). As explained in the Court's May 18, 2026 Order (Doc. 35 at 4–5), Title II defines "place of public accommodation" as lodgings, restaurants, gas stations, and entertainment facilities. 42 U.S.C. § 2000a(b). Courts construe this list narrowly and have consistently declined to expand the scope of the statute beyond the facilities specifically enumerated. *See, e.g.*, *Ford v. Surprise Fam. Urgent Care Ctr., LLC*, No. CV 10-1920-PHX-SRB, 2011 WL 13137866, at *2 (D. Ariz. Sept. 6, 2011), *aff'd*, 550 F. App'x 467 (9th Cir. 2013); *Dragonas v. Macerich*, No. CV-20-01648-PHX-MTL, 2021 WL 3912853, at *4 (D. Ariz. Sept. 1, 2021); *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 431 (4th Cir. 2006) (noting that Title II "excludes from its coverage those categories of establishments not listed"); *303 Creative LLC v. Elenis*, 600 U.S. 570, 609 (2023) (Sotomayor, J., dissenting) (noting

that 42 U.S.C. § 2000a limits the establishments that qualify to "hotels, restaurants, gas stations, movie theaters, concert halls, sports arenas, stadiums").

Plaintiff does not argue that NAPA is a place of lodging, a restaurant, a gas station, or an entertainment facility. Instead, Plaintiff argues that NAPA is a retail store and that courts "have consistently recognized that retail stores fall within the statute's scope." (Doc. 44 at 12). In support, Plaintiff cites to *Arizona Board of Regents v. Doe*, 555 F. Supp. 3d 805, 820 (D. Ariz. 2021), and *Hodge v. Home Depot*, No. CV-24-02171-PHX-JJT, 2024 WL 4026218 (Sep. 3, 2024). However, these cases do not support Plaintiff's assertion. *Arizona Board of Regents* involves trademark claims and does not discuss Title II at all. 555 F. Supp. 3d. at 809. And in *Hodge v. Home Depot*, the Court held that plaintiff could not state a Title II claim against Home Depot because Title II is not applicable to a hardware store. 2024 WL 4026218, at *1. Plaintiff has not cited, and the Court was not able to locate, any cases concluding that retail stores fall within the scope of Title II.[1]

In fact, courts interpreting 42 U.S.C. § 2000a(b)(2) have concluded that retail establishments are not covered by Title II. *See, e.g.*, *Newman v. Piggie Park Enters., Inc.*, 377 F.2d 433, 436 (4th Cir. 1967) ("Retail stores, food markets, and the like were excluded from [Title II] for the policy reason that there was little, if any, discrimination in the operation of them."), *aff'd*, 390 U.S. 400 (1968); *United States v. Johnson Lake Inc.*, 312 F. Supp. 1376, 1381 n.1 (S.D. Ala. 1970) (citing legislative history of the act suggesting that "retail stores . . . are ordinarily excluded from the bill," and that a "department store or other retail establishment would not be subject as such to the restrictions of Title II" (citations omitted)); *Priddy v. Shopko Corp.*, 918 F. Supp. 358, 159 (D. Utah June 22, 1995) ("It is clear that Congress did not intend for retail establishments . . . to be included in § 2000a. . . . The clear implication of [§ 2000a(b)(2)] is that Congress did *not* intend to include retail establishments—thus the need to make clear that restaurant type facilities

---

[1] While some courts have noted in dicta that "retail establishments" are listed among the "fifteen specific examples" of places of public accommodation in the statute, *see Welsh v. Boy Scouts of Am.*, 993 F.2d 1267, 1269 (7th Cir. 1993); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir. 1994), the Court is persuaded by the plethora of cases interpreting § 2000a(b)(2) as excluding retail stores, as discussed below.

within a retail establishment were covered under 42 U.S.C. § 2000a(b)(2). If retail establishments were also intended to be covered, there would be no need for this provision."); *Taylor v. Volkswagen of Am., Inc.*, No. C07-1849RSL, 2008 WL 618618, at *2 (W.D. Wash. Mar. 3, 2008) (same); *Brackens v. Big Lots, Inc.*, No. A-06-CA-532 LY, 2007 WL 208750, at *2 (W.D. Tex. 2007) (same); *Jones v. Brouwer*, No. CV 20-7067-MWF, 2020 WL 7127125, at *3 (C.D. Cal. Oct. 16, 2020) (same).

Moreover, courts directly faced with the question of whether retail stores are covered have held that retail stores are not places of public accommodation under Title II. *See, e.g.*, *United States v. Baird*, 85 F.3d 450, 451 (9th Cir. 1996) (holding that the presence of video game machines turned a retail convenience store into a place of entertainment and therefore a public accommodation under Title II); *Dragonas*, 2021 WL 3912853, at *4 (concluding shopping malls are not covered by Title II); *Brackens*, 2007 WL 208750, at *2–3 (concluding that retail store Big Lots is not covered by Title II); *Gray v. Saks Fifth Avenue*, No. CV-20-01987-JJT, 2022 WL 860655, at *2 (D. Ariz. Mar. 23, 2022) ("Because Defendant is a clothing retailer, not a restaurant, lodging, or entertainment facility, Defendant cannot be characterized as a place of public accommodation within the meaning of Title II."); *Jones*, 2020 WL 7127125, at *3 (concluding that car dealerships are not covered under Title II and noting that "[i]f car dealerships were considered public accommodations, so too would every retail establishment that physically offers goods for sale"); *Hodge v. Home Depot*, 2024 WL 4026218, at *1.

Plaintiff has presented nothing to contradict the overwhelming consensus that retail stores are not places of public accommodation under Title II. Therefore, the Court finds no clear error regarding the Title II claim against NAPA.

### C. Section 1981

Plaintiff argues that the Court mistakenly failed to analyze his claims arising under 42 U.S.C. § 1981. (Doc. 44 at 13). Count 3 of Plaintiff's Amended Complaint (Doc. 12) alleged witness retaliation against Defendant NAPA Genuine Auto Parts ("NAPA") in violation of Title II, § 1981, and EEOC Enforcement Guidance. (Doc. 12 at 8). The Court's

Screening Order (Doc. 16) dismissed Count 3 for lack of standing. (Doc. 16 at 3–4). Plaintiff's only remaining claims against NAPA were: Count 1, Public Accommodation Discrimination in violation of 42 U.S.C. § 200a and A.R.S. § 41-1442; and Count 2, Negligent Supervision and Retention in violation of Arizona common law. (Doc. 12 at 7–8; Doc. 16 at 3–4). Plaintiff raised a § 1981 contractual discrimination claim only against DoorDash, Inc. (Doc. 12 at 8–9), a defendant in a separate case that was severed from this present action against NAPA (Doc. 1). The Court's May 18, 2026 Order (Doc. 35) did not analyze any claims under § 1981 because Plaintiff did not raise a § 1981 contractual discrimination claim against NAPA, and the Court had already dismissed Plaintiff's § 1981 witness retaliation claim against NAPA. Therefore, the Court did not err by failing to analyze Plaintiff's § 1981 claims as no such claims were pending before the Court.

## D. Negligent Supervision

Plaintiff argues that the Court erred in analyzing his negligent supervision claim under the second and third *Eitel* factors. (Doc. 44 at 15); *see Eitel*, 782 F.2d at 1471–72. As the Court explained in the May 18, 2026 Order, an employer cannot be held liable for negligent supervision in Arizona if the underlying tort fails, and here, the court had already determined that the underlying claim of public accommodation discrimination failed. (Doc. 35 at 7). Plaintiff argues that the Court erred because "the underlying claim remained plausible." (Doc. 44 at 15). However, the Court determined that both of Plaintiff's public accommodation discrimination claims failed to state a claim. (Doc. 35 at 4–6, 10–11). Moreover, the Court did not rely "solely" on the failure of the underlying tort, as Plaintiff suggests (Doc. 44 at 15); the Court additionally found that Plaintiff failed to show knowledge or causation. (Doc. 35 at 7–8). Therefore, the Court finds no clear error regarding the negligent supervision claim.

## IV. COCNLUSION

Accordingly,

**IT IS ORDERED** that the motion to file the motion for reconsideration late is granted (Doc. 43).

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Reconsideration (Doc. 44) is denied.

**IT IS FURTHER ORDERED** that Plaintiff has 15 days from the date of this Order to file a second amended complaint. If Plaintiff fails to file a second amended complaint within this deadline, the Clerk of the Court shall enter judgment dismissing this case. If Plaintiff files a second amended complaint, it shall not be served until it is screened.[2]

Dated this 1st day of July, 2026.

James A. Teilborg
Senior United States District Judge

---

[2] In the event Plaintiff chooses to amend, the Court would vacate the Clerk of Court's entry of default (Doc. 25) because Plaintiff would need to serve NAPA again.